POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Pheiffer*

[Additional counsel on signature page]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERALD M. MONTAG, Individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>VOLKSWAGEN AG, VOLKSWAGEN GROUP OF AMERICA, INC., SCOTT KEOGH, and MARK GILLIES,<br><br>        Defendants. | Case No. 2:21-cv-03678-MCS-AS<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF BETTY JO PHEIFFER FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL<br><br>DATE:  August 2, 2021<br>TIME:  9:00 a.m.<br>JUDGE:  Mark C. Scarsi<br>CTRM:  7C (1st Street Courthouse) |

# **TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ....................................................................................1

II.   STATEMENT OF FACTS ...........................................................................................2

III.  ARGUMENT..................................................................................................................6

    A.   PHEIFFER SHOULD BE APPOINTED LEAD PLAINTIFF .................6

        1.   Pheiffer Is Willing to Serve as Class Representative...........................7

        2.   Pheiffer Has the "Largest Financial Interest".....................................8

        3.   Pheiffer Otherwise Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure .........................................................9

        4.   Pheiffer Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses .................................. 12

    B.   LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED ..................................................................................................13

IV.   CONCLUSION............................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)...................................................................................................12

*Baby Neal v. Casey*,
    43 F.3d 48 (3d Cir. 1994) ..........................................................................................11

*Beck v. Maximus, Inc.*,
    457 F.3d 291 (3d Cir. 2006) .......................................................................................11

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, No. 11-CV-04003-LHK,
    2012 U.S. Dist. LEXIS 2776 (N.D. Cal. Jan. 9, 2012)...............................................9

*Danis v. USN Communs., Inc.*,
    189 F.R.D. 391 (N.D. Ill. 1999)................................................................................10

*Fischler v. Amsouth Bancorporation*,
    176 F.R.D. 583 (M.D. Fla. 1997) ..............................................................................10

*Gluck v. Cellstar Corp.*,
    976 F. Supp. 542 (N.D. Tex. 1997) ...........................................................................10

*Greebel v. FTP Software*,
    939 F. Supp. 57 (D. Mass. 1996)...............................................................................10

*In re Comverse Tech., Inc., Sec. Litig.*,
    2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007)..............................................8

*In re Olsten Corp. Sec. Litig.*,
    3 F. Supp.2d 286 (E.D.N.Y. 1998) .........................................................................8, 10

*In re Oxford Health Plans, Inc. Sec. Litig.*,
    182 F.R.D. 42 (S.D.N.Y. 1998) .................................................................................10

*Knox v. Yingli Green Energy Holding Co.*,
    136 F. Supp. 3d 1159 (C.D. Cal. 2015) ....................................................................8, 9

*Lax v. First Merch. Acceptance Corp.*,
    1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) ...........................................8, 9

*Nicolow v. Hewlett Packard Co.*, Nos. 12-05980 CRB *et al.*,
2013 U.S. Dist. LEXIS 29876 (N.D. Cal. Mar. 4, 2013) ............................................... 9

*Osher v. Guess ?, Inc.*,
2001 U.S. Dist. LEXIS 6057 (C.D. Cal. Apr. 26, 2001) ............................................. 13

*Riordan v. Smith Barney*,
113 F.R.D. 60 (N.D. Ill. 1986) ..................................................................................... 11

## Statutes

15 U.S.C. § 78u-4 ........................................................................................................ *passim*

PSLRA ....................................................................................................................... 9, 12

## Rules

Fed. R. Civ. P. 23 ....................................................................................................... *passim*

Movant Betty Jo Pheiffer ("Pheiffer") respectfully submits this Memorandum of Law in support of her motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for the entry of an Order: (1) appointing Pheiffer as Lead Plaintiff on behalf of a class (the "Class") consisting of all persons other than the above-captioned defendants ("Defendants") who purchased or otherwise acquired Volkswagen AG ("Volkswagen" or the "Company") securities between March 29, 2021 and March 30, 2021, both dates inclusive (the "Class Period"); and (2) approving Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class in the above-captioned action (the "Action").

## I.    PRELIMINARY STATEMENT

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant who possesses the largest financial interest in the outcome of the action and who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  Pheiffer, with losses of approximately $912 in connection with her purchases of Volkswagen securities, has the largest financial interest in the relief sought in the Action to her knowledge.  *See* Declaration of Jennifer Pafiti in Support of Motion ("Pafiti Decl."), Exhibit ("Ex.") A.  Pheiffer further satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure because she is an adequate representative

with claims typical of the other Class members. Accordingly, Pheiffer respectfully submits that she should be appointed Lead Plaintiff.

## II. STATEMENT OF FACTS

Volkswagen purports to be one of the world's largest producers of passenger cars.

Volkswagen is a German corporation with its principal executive offices in Wolfsburg, Germany. Volkswagen's American depositary receipt ("ADRs") trade on OTC under the ticker symbol "VWAGY."

On March 29, 2021, Volkswagen's wholly-owned subsidiary Volkswagen Group of America ("VWoA") published a "draft" of a press release announcing its purported name change to "Voltswagen" on its website for a short time. This "draft" had the incorrect date of "April 29."

On March 29, 2021, in response to the name change press release, multiple news agencies reported that they confirmed with Company insiders that the name change was real.

Throughout the Class Period, Defendants made false and/or misleading statements and/or failed to disclose that: (1) "Voltswagen" was never going to be used by the Company, VWoA, or on any relevant vehicle; (2) Volkswagen, VWoA, and their spokespeople purposefully misled reporters regarding the now-purported "joke" and/or "promotion"; and (3) as a result, Defendants' public statements and statements to journalists were materially false and/or misleading at all relevant times.

Late on March 30, 2021, still two days before April Fool's Day on April 1, the Wall Street Journal published a "WSJ News Exclusive" which was entitled "No, Volkswagen Isn't Rebranding Itself Voltswagen: German car maker says announcement by its U.S. operation was supposed to be an April Fools' gag[.]" The Wall Street Journal article reported, in pertinent part, that:

> Volkswagen AG's U.S. subsidiary said Tuesday the company would rebrand itself as Voltswagen of America to promote its electric car strategy, but *a spokesman for the parent company in Germany later said the move was a joke.*
>
> ***
>
> The problem for VW is that everyone took it seriously, creating confusion about the company's intentions and moving the shares, putting VW's communications team on the defensive.
>
> ***
>
> The spoof began late Monday, when VW communications in the U.S. published a draft of the press release on the company's website and then quickly took it down, according to VW officials in Germany.
>
> They left the document online long enough to grab the attention of journalists and VW fans, sparking a flood of online news and tweets.
>
> ***
>
> *VW's U.S. unit published the release in full again on Tuesday on the U.S. website, a move that suggested the name change was in fact real and would take effect as stated in the release in May*.
>
> The press release quoted Scott Keogh as president and CEO of Voltswagen of America saying: "We might be changing out our K for a T, but what we aren't changing is this brand's commitment to making best-in-class vehicles for drivers and people everywhere."

Back in Germany, a VW official told the Journal that the name change shouldn't be taken seriously.

*"There will be no name change,"* the official said.

*Volkswagen's top executives have become more active on social media recently*. The CEO, Herbert Diess, is a frequent contributor to his LinkedIn page and recently opened a Twitter feed. But until now the company has refrained from PR stunts or outlandish statements that are more typical of Tesla CEO Elon Musk.

*Investors have been clamoring for shares of companies involved in electric vehicles and have recently been pouring money into the stocks of established car makers with solid EV plans*.

(Emphasis added.)

On March 31, 2021, further reports regarding how Volkswagen, VWoA, and its spokespeople purposefully misled to reporters were published. For example, ABC News published an article entitled "An unwelcome prank: Volkswagen purposely hoodwinks reporters: Journalists are wary of looking out for pranksters around April Fool's Day, but this time it came from a multi-billion dollar corporation[.]" The ABC News article reported, in pertinent part, that:

*Volkswagen admitted Tuesday that it had put out a false news release saying that it had changed the name of its U.S. subsidiary to "Voltswagen of America"* in an attempt to be funny and promote a new electric utility vehicle.

*Several news organizations, including The Associated Press, USA Today, CNBC and The Washington Post, had reported the original press release as real news, some after being assured specifically that it was no joke.*

\*\*\*

MEMORANDUM OF POINTS AND AUTHORITIES - 2:21-cv-03678-MCS-AS

4

*"The Associated Press was repeatedly assured by Volkswagen that its U.S. subsidiary planned a name change, and reported that information, which we now know to be false," company spokeswoman Lauren Easton said.* "We have corrected our story and published a new one based on the company's admission. This and any deliberate release of false information hurts accurate journalism and the public good."

The story emerged Monday after a news release was briefly posted on a company website and then disappeared, but not before catching some eyes. CNBC, which declined comment on the hoax, is believed to be the first major news organization to report it as legitimate news.

*The AP wrote a story about it Monday after its reporter was assured by Mark Gillies, a company spokesman in the United States, that it was serious, Easton said.*

*It was a similar story at USA Today, where a reporter specifically asked if it was a joke and was told "no," said the newspaper's spokeswoman, Chrissy Terrell.*

"The company used this fake announcement as a way to manipulate respected reporters from trusted news outlets to get attention for their marketing campaign," she said. "We are disheartened that the company would choose this type of disingenuous marketing."

The USA Today reporter who was initially lied to was more blunt.

*"This was not a joke," reporter Nathan Bomey wrote on Twitter. "It was deception.* In case you haven't noticed, we have a misinformation problem in this country. Now you're part of it. Why should anyone trust you again?"

*At first on Tuesday, the company doubled down on its story by reissuing the news release, which quoted Scott Keogh, the president and CEO of Volkswagen of America. It even changed its Twitter page, announcing that "we know, 66 is an unusual age to change your name, but we've always been young at heart."*

\*\*\*

*Gillies, after presenting the false information the day before, came clean on Tuesday*. The Journal quoted a spokesman for the company in Germany as saying, "we didn't mean to mislead anyone. The whole thing is just a marketing action to get people talking" about its new car model.

The AP and other news organizations that falsely reported the news later wrote about the hoax. "About that plan to change Volkswagen of America's name." wrote USA Today's Mike Snider. "Never mind."

(Emphasis added.)

On this news, Volkswagen ADRs fell $2.14 per ADR, or over 5%, over the next two full trading days, to close at $35.58 per share on April 1, 2020, damaging investors.

As a result of Defendants' wrongful acts and omissions, and the decline in the market value of the Company's securities, the plaintiff in the Action and other Class members have suffered significant losses and damages.

## III.    ARGUMENT

### A.    PHEIFFER SHOULD BE APPOINTED LEAD PLAINTIFF

Pheiffer should be appointed Lead Plaintiff because, to her knowledge, she has the largest financial interest in the Action and otherwise meets the requirements of Rule 23. Section 21D(a)(3)(B) of the PSLRA sets forth procedures for the selection of lead plaintiff in class actions brought under the Exchange Act.  The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) &(ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice.   Under this section, the Court "shall" appoint "the presumptively most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
>  (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Pheiffer satisfies all three of these criteria and thus is entitled to the presumption that she is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

**1.     Pheiffer Is Willing to Serve as Class Representative**

On April 30, 2021, counsel for plaintiff in the Action caused a notice to be published over *Business Wire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, which announced that a securities class action had been filed against Defendants, and advised investors of Volkswagen securities that they had until June 29, 2021—*i.e.*, 60 days—to file a motion to be appointed as Lead Plaintiff.  *See* Pafiti Decl., Ex. B.

Pheiffer has filed the instant motion pursuant to the Notice and has attached a sworn Certification attesting that she is willing to serve as a representative for the Class and to provide testimony at deposition and trial, if necessary.  *See* Pafiti Decl., Ex. C. Accordingly, Pheiffer satisfies the first requirement to serve as Lead Plaintiff of the Class.

### 2.      Pheiffer Has the "Largest Financial Interest"

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).

As of the time of the filing of this motion, Pheiffer believes that she has the largest financial interest of any of the Lead Plaintiff movants based on the factors articulated in the seminal case *Lax v. First Merch. Acceptance Corp.*, 1997 U.S. Dist. LEXIS 11866, at *7-*8 (N.D. Ill. Aug. 6, 1997) (financial interest may be determined by (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered).[1]  In accord with courts nationwide, these so-called *Lax* factors have been adopted by courts in the Ninth Circuit, including in this District.  *See, e.g.*, *Knox v. Yingli Green Energy Holding Co.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2015) ("District courts have typically considered the [*Lax*] factors to determine who has

---

[1] *See also In re Olsten Corp. Sec. Litig.*, 3 F. Supp.2d 286, 296 (E.D.N.Y. 1998). *Accord In re Comverse Tech., Inc., Sec. Litig.*, 2007 U.S. Dist. LEXIS 14878, at *22-*25 (E.D.N.Y. Mar. 2, 2007) (collectively, the "Lax-Olsten" factors).

MEMORANDUM OF POINTS AND AUTHORITIES - 2:21-cv-03678-MCS-AS

the largest financial interest[.]" (internal quotation marks and citations omitted)); *Nicolow v. Hewlett Packard Co.*, Nos. 12-05980 CRB *et al.*, 2013 U.S. Dist. LEXIS 29876, at \*18 (N.D. Cal. Mar. 4, 2013) (same); *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, No. 11-CV-04003-LHK, 2012 U.S. Dist. LEXIS 2776, at \*10-\*11 (N.D. Cal. Jan. 9, 2012) (same). Of the *Lax* factors, courts in this Circuit tend to emphasize approximate loss in assessing a lead plaintiff movant's financial interest within the meaning of the PSLRA. *See, e.g.*, *Knox*, 135 F. Supp. 3d. at 1163; *Nicolow*, 2013 U.S. Dist. LEXIS 29876, at \*18-\*19.

During the Class Period, Pheiffer (1) purchased 411 shares of Volkswagen securities; (2) expended $15,002 on her purchases of Volkswagen securities; (3) retained all of her shares of Volkswagen securities; and (4) as a result of the disclosure of the fraud, suffered a loss of $912 in connection with her Class Period purchases of Volkswagen securities. *See* Pafiti Decl., Ex. A. Because Pheiffer possesses the largest financial interest in the outcome of this litigation, she may be presumed to be the "most adequate" plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### 3. Pheiffer Otherwise Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil

Procedure."   Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that the Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification; instead a *prima facie* showing that the movant satisfies the requirements of Rule 23 is sufficient. *Greebel v. FTP Software*, 939 F. Supp. 57, 60 (D. Mass. 1996).   Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (citing *Gluck v. Cellstar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997) and *Fischler v. Amsouth Bancorporation*, 176 F.R.D. 583 (M.D. Fla. 1997)); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d at 296.

The typicality requirement of Rule 23(a)(3) is satisfied where the named representative's claims have the "same essential characteristics as the claims of the class at large." *Danis v. USN Communs., Inc.*, 189 F.R.D. 391, 395 (N.D. Ill. 1999).  In other words, "the named plaintiffs' claims [must be] typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the

class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-96 (3d Cir. 2006) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994) (noting that "factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory")).

The claims of Pheiffer are typical of those of the Class. Pheiffer alleges, as do all class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Volkswagen, or omitted to state material facts necessary to make the statements they did make not misleading. Pheiffer, as did all members of the Class, purchased Volkswagen securities during the Class Period at prices artificially inflated by Defendants' misrepresentations or omissions and was damaged upon the disclosure of those misrepresentations and/or omissions. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the class." The class representative must also have "sufficient interest in the outcome of the case to ensure vigorous advocacy." *Riordan v. Smith Barney*, 113 F.R.D. 60, 64 (N.D. Ill. 1986); *Beck*, 457 F.3d at 296 (emphasizing that the adequacy inquiry "'serves

to uncover conflicts of interest between named parties and the class they seek to represent'" (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997))).

Pheiffer is an adequate representative for the Class.  There is no antagonism between the interests of Pheiffer and those of the Class, and her losses demonstrate that she has a sufficient interest in the outcome of this litigation.  Moreover, Pheiffer has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this Action, and submits her choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

Pheiffer likewise has demonstrated her adequacy because she has submitted a Declaration attesting to, *inter alia*, her background, her investing experience, her understanding of the responsibilities of lead plaintiffs pursuant to the PSLRA, her decision to seek appointment as lead plaintiff, and the steps that she is prepared to take to cooperatively prosecute this litigation on behalf of the Class.  *See* Pafiti Decl., Ex. D.

### 4.    Pheiffer Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses

The presumption in favor of appointing Pheiffer as Lead Plaintiff may be rebutted only upon proof "by a purported member of the plaintiffs' class" that the presumptively most adequate plaintiff:

> (aa)   will not fairly and adequately protect the interest of the class; or
>
> (bb)  is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(b)(iii)(II).

The ability and desire of Pheiffer to fairly and adequately represent the Class has been discussed above. Pheiffer is not aware of any unique defenses Defendants could raise that would render her inadequate to represent the Class.

## B.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Osher v. Guess?, Inc.*, 2001 U.S. Dist. LEXIS 6057, at *15 (C.D. Cal. Apr. 26, 2001). The Court should interfere with Lead Plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Pheiffer has selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume. Pomerantz recently secured a recovery of $3 billion on behalf of investors in the securities of Petróleo Brasileiro S.A. — Petrobras, the largest class action settlement in a decade and the largest settlement ever in a class action involving a foreign issuer. *See* Pafiti Decl., Ex. E. Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 06-CV-1825 (E.D.N.Y.), in June 2010. *See id.* Most recently, Pomerantz announced as Lead Counsel

on behalf of a class of Fiat Chrysler Automobiles N.V. investors that it has reached a $110 million settlement with the company. *See id.* As a result of Pomerantz's extensive experience in litigation involving issues similar to those raised in the Action, Pheiffer's counsel have the skill and knowledge which will enable them to prosecute the Action effectively and expeditiously. Thus, the Court may be assured that by approving the selection of Lead Counsel by Pheiffer, the members of the class will receive the best legal representation available.

## IV. CONCLUSION

For the foregoing reasons, Pheiffer respectfully requests that the Court issue an Order: (1) appointing Pheiffer as Lead Plaintiff for the Class; and (2) approving Pomerantz as Lead Counsel for the Class.

Dated:  June 29, 2021                    POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Pheiffer and Proposed Lead Counsel for the Class*

PORTNOY LAW FIRM
Lesley F. Portnoy, Esq.
1800 Century Park East, Suite 600
Los Angeles, California 90067
Telephone: (310) 692-8883
lesley@portnoylaw.com

*Additional Counsel for Pheiffer*

CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2021, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Jennifer Pafiti*
Jennifer Pafiti